**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WENNEASHA LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-cv-10220 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| TRAVELERS MANAGEMENT | ) | |
| GROUP, LLC, and REEL TIME | ) | |
| CAPITAL, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Wenneasha Love, a truck driver, got annoyed by repeated calls from a collection agency to pay an overdue debt. Her phone kept ringing off the hook, and it got under her skin. She didn't appreciate calls to her mother, either. So she sued two collection agencies under the Fair Debt Collection Practices Act, which prohibits harassment, threats, and misrepresentations during debt collection.

Love sued the company that placed the calls, Travelers Management Group, LLC. She also sued a second debt collector, Reel Time Capital, LLC. Reel Time hired Travelers to do the heavy lifting on its behalf, so they have a principal-agent relationship. Basically, she didn't love that Travelers and Reel Time were giving her a really hard time as she was traveling down the road.

The complaint alleges that Reel Time (as the principal) is vicariously liable for the actions of Travelers (as the agent). *See* Cplt., at ¶¶ 12, 16, 30–34 (Dckt. No. 1). Vicarious liability applies under the FDCPA. Otherwise, a debt collector could escape liability by pawning off the dirty work to someone else. *See, e.g.*, *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d

872, 876 (N.D. Ill. 2006) ("[A] debt collector may be held vicariously liable for the actions of a second debt collector working as an agent of the first."); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) (holding that a debt-collector defendant can be liable for its agents' actions because "[a] debt collector should not be able to avoid liability . . . simply by contracting with another company to do what the law does not allow it to do itself").

Reel Time (again, the principal) answered the complaint, but Travelers (the agent) has not. In fact, Travelers is off the grid and missing in action, despite getting served with process months ago. Travelers might be an aggressive debt collector, but it's a passive litigator. It's good at making calls, but not so good at answering complaints.

Love responded by filing a motion for a default judgment against Travelers. She seeks $1,000 in statutory damages and $9,000 in actual damages for emotional distress.

Travelers didn't respond to the motion, because it remains AWOL. But Reel Time did. Reel Time isn't wild about a judgment against Travelers because Reel Time potentially has vicarious liability for Travelers as its principal. As Reel Time sees things, this Court should hold off on pinning down the amount of damages.

This Court can't enter judgment against Travelers without resolving the issue of damages. A judgment is not merely a generic expression of liability, saying that one party is liable to another, with the details to be sorted out later. There is no "later." A final judgment is just that – a final, once-and-for-all statement that resolves all disputes between the parties.

A judgment that doesn't resolve the issue of remedies isn't a thing. A judgment must wrap up the issue of liability as to a defendant, with nothing left to do except execute the judgment. Kicking the can on the issue of remedies isn't an option. *See* Fed. R. Civ. P. 54.

2

So, this Court is now faced with Love's request to enter a default judgment against Travelers (the agent) now, while the claims against Reel Time (the principal) remain pending. That request requires this Court to explore a case that the Supreme Court decided more than 150 years ago.

The punchline is that this Court needs to sit tight on entering a default judgment against the agent until this Court has resolved the claims against the principal on the merits. For the reasons that follow, this Court must hold off on entering default judgment on the front end, and must wait until the dust has settled on the back end.

## I.     The *Frow* Rule

Most of the time, entering a default judgment is straightforward. If a defendant doesn't participate in a case, a district court can enter a default judgment against that party, and that party has to take its lumps and pay the piper. And then, a district court can handle the claims against any remaining defendants.

The issue gets complicated when the case involves joint liability, and one of the parties has failed to participate. And it's especially tricky when the case involves vicarious liability. Vicarious liability means that two defendants are tethered together, and one defendant is liable for the acts of another defendant based on their special relationship. The principal is liable for the bad acts of the agent under a theory of *respondeat superior*.

That's the situation here. The liability of Reel Time as the principal depends in part on the wrongfulness of the conduct of Travelers as the agent. After all, Reel Time didn't call Love or Love's mom. Travelers did.

3

The liability of the principal depends on the liability of the agent. If Travelers did nothing wrong, then Reel Time can't be liable. But if Travelers is liable (as the agent), then Reel Time is potentially on the hook (as the principal).

When the liability of co-defendants is mutually dependent, multiple judgments create a potential for inconsistencies. There is no issue if the participating defendants lose the case on the merits. In that situation, a lower court can enter judgment against all of the defendants, including the participating defendants and the non-participating defendant. If everyone loses, there is no inconsistency.

But a potential problem arises if the participating defendants prevail on the merits. A ruling in favor of the participating defendants might be inconsistent with a default judgment against a non-participating defendant.

In that situation, a district court ordinarily should hold off on entering a default judgment against the defaulting party until the court has adjudicated the merits of the claims against all other defendants. *See Frow v. De La Vega*, 82 U.S. 552, 554 (1872) (forbidding an early default judgment against only one defendant in a joint-liability case because a later contradictory judgment could be "unseemly," "incongruous," and "absurd"); *see also Home Ins. Co. of Illinois v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998) (citing *Frow*, 82 U.S. at 552) ("In a suit against multiple defendants a default judgment should not be entered against one until the matter has been resolved as to all.").

The Supreme Court established that principle in 1872 in *Frow*. It isn't common for the leading case on a procedural question to come from the Reconstruction era. But the issue at hand is a rare exception. *Frow* was decided in 1872, when the embers of Chicago were probably still warm from the Great Chicago Fire of 1871.

4

In *Frow*, the Supreme Court addressed a joint conspiracy claim against eight defendants for defrauding a landowner out of a large tract of land in Texas. *See Frow*, 82 U.S. at 554. The plaintiff alleged that the defendants had forged a power of attorney, and had gotten their hands on his title by fraudulent means.

*Frow* involved joint liability for two reasons.

First, the defendants engaged in concerted action, meaning that they did the same thing. *Frow* involved joint liability based on a single tortious act committed by several people. The joint action meant that everyone was liable, or no one was liable.

Second, the case involved a single *res*, meaning one title to a particular piece of property. So liability needed to be all-or-nothing. The question of liability was an either/or proposition: either the plaintiff was defrauded out of his title, or he wasn't.

One of the defendants didn't respond to the complaint. That defendant later showed up and gave a litany of excuses – "misunderstanding, sickness, and other accidents" – but the lower court was unimpressed. *Id.* at 553.

The lower court entered a default judgment against that defendant (or the nineteenth-century equivalent of a default judgment, anyway). Importantly, the lower court also "adjudged the title of the land to be in the complainant," meaning that the plaintiff owned the property. *Id.*

Seven other defendants did respond to the complaint, and actively defended the case. And in the end, they prevailed on the merits. *Id.* So the conveyance of title from the plaintiff to the defendants wasn't fraudulent after all.

The two judgments tugged in different directions. The default judgment against one defendant said that the plaintiff owned the property. But the judgment on the merits in favor of the seven defendants said that the plaintiff didn't own the property. *See Whelan v. Abell*, 953

F.2d 663, 674 (D.C. Cir. 1992) ("The result was two irreconcilable judgments: according to the default decree, the plaintiff held title; under the judgment on the merits, the seven other defendants did.") (construing *Frow*).

The Supreme Court in *Frow* rejected the default judgment against the non-participating defendant in light of judgment in favor of the participating defendants. And the Supreme Court ruled that the lower court should have held off on entering a default judgment against the non-participating defendant when a claim involving joint liability remained pending against other defendants. *See Frow*, 82 U.S. at 554 ("A final decree on the merits cannot be made separately against one of several defendants upon a joint charge against all, where the case is still pending as to the others.").

Otherwise, an "absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill." *Id.* That is, an early default judgment against one defendant might be inconsistent with a later judgment on the merits in favor of the other defendants.

The Supreme Court explained that a decision on joint liability needed to come first because it would drive the train for everyone. The case involved joint liability about a single act of alleged fraud. So a decision on the merits of joint liability would dictate the outcome for everyone – including the defaulting defendant.

"If the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike – the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree

6

on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal." *Id.*

That absurdity materialized in the lower court. Seven defendants ultimately prevailed on the merits, meaning that there was no fraudulent conveyance of the title. If no fraud took place, then the defaulting defendant couldn't be liable for fraud, either. "[S]uch an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law." *Id.*

The lower court ruled in favor of the seven defendants on the merits, based on the finding that the plaintiff wasn't defrauded. So, it would be "absurd" to enter a default judgment against the defaulting defendant based on the notion that plaintiff *was* defrauded. *Id.* at 554. The conveyances of title couldn't be fraudulent and non-fraudulent at the same time. Either fraud took place, or it didn't.

To put things in the language of the Wild West (*Frow* is an 1872 case from Texas, after all), the lower court put the wagon before the horse. The lower court entered a default judgment against one defendant while the claims involving joint liability remained pending against the other defendants. The lower court should have sat tight and held its horses, but it jumped the gun.

When there is joint liability, a court cannot enter default judgment against one defendant and enter judgment in favor of other defendants on the merits for a simple reason. Joint liability is binary. Either there is joint liability (for all defendants), or there isn't (for any of them).

*Frow* has at least two key takeaways.

First, lower courts should hold off on entering a default judgment against one defendant on a claim that involves joint liability until the court has resolved the claims against other defendants on the merits.

Second, when the time comes, a lower court cannot enter a default judgment against a defendant if it is necessarily inconsistent with a judgment on the merits in favor of other defendants. *See* 10 MOORE'S FEDERAL PRACTICE § 55.36[2] (3d ed. 2025) ("*Frow* stands for the narrow rule that a default judgment may not be entered against one of several defendants (1) when the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or (2) when the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant. Both of these situations were present in *Frow* – the plaintiff alleged a joint conspiracy, and sought title to a single res."); *see also* 10A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2690 (4th ed. 2026) ("As a general rule then, when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted.").

In effect, *Frow* means that a judgment on the merits in favor of one defendant would bar an inconsistent default judgment against a non-participating defendant, akin to collateral estoppel. As the Third Circuit put it, with many courts joining the bandwagon, "we believe that *Frow* stands for the proposition that if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved." *See*

8

*Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986); *see also* 10 MOORE'S

FEDERAL PRACTICE § 55.36[2] (3d ed. 2025) (quoting that passage from *Farzetta* with approval).

## II.     The Reach of *Frow*

If you think that the last 150 years have given courts enough time to pin down the reach

of *Frow*, you have another think coming.

For decades, courts have debated how far to extend, or how narrowly to limit, the reach

of *Frow*. The Seventh Circuit has touched on the *Frow* principle in a smattering of cases. But

it's a light touch. The leading Seventh Circuit case is a much-cited decision involving an

antitrust claim with joint and several liability. *See In re Uranium Antitrust Litigation*, 617 F.2d

1248 (7th Cir. 1980).

Before diving in, it is worth pausing for a brief refresher about the meaning of joint

liability, several liability, and joint and several liability. Joint liability is different than several

liability. What's more, joint liability and several liability (on the one hand) are different than

joint and several liability (on the other hand), too.

Joint liability means that all defendants are liable, or no defendant is liable. *See Whelan*

*v. Abell*, 953 F.2d 663, 674–75 (D.C. Cir. 1992) (stating that joint liability is a theory of recovery

that "requires that all defendants be found liable if any one of them is liable"); *Lemache v.*

*Tunnel Taxi Mgmt., LLC*, 354 F. Supp. 3d 149, 152, 153 (E.D.N.Y. 2019) ("[J]oint liability

requires all defendants to be liable for any one of them to be liable. . . . Where there is a claim

premised on joint liability, it is impossible for one defendant to be liable unless all other

defendants are also liable."); *see also* 10 MOORE'S FEDERAL PRACTICE § 55.36[2] (3d ed. 2025)

(describing "true joint liability" as the situation where, "as a matter of law, no one defendant may

be liable unless all defendants are liable"); Richard A. Epstein, *Torts* § 9.1 (2d ed. 2026) ("In its

original, narrowest conception, liability was joint when each of two or more Ds joined in the same deliberate act that brought about P's harm. Thus, if six men wielded the same log as a battering ram against P's house, then the moving force was attributable to all equally, so that each could be held responsible for the entire harm, even if none of them could lift or move the log by himself."). Joint liability is an all-or-none proposition. One way or the other, all defendants are in it together.

Joint liability is like being on a ship with a bunch of friends, and hitting an iceberg in the North Atlantic. It's sink-or-float time, for everyone. You're going to stay afloat as a group, or you're all going down together. Everyone is in the same boat, literally and figuratively.

Several liability, on the other hand, is *independent* liability. Several liability means that any defendant can be liable (meaning one or more defendants), but any liable defendant is responsible for only his or her share. *See* Richard A. Epstein, *Torts* § 9.2 (2d ed. 2026) (stating that, under several liability, "each D is responsible for only his individual share of the total loss"). It's every man for himself, and every woman for herself.

Several liability is like swimming with other people in the ocean. It's sink-or-swim time, but each person is on his or her own. Each swimmer could meet a different fate. One person could tread water just fine, and another person could sink to the bottom and visit Davy Jones's locker.

As the name suggests, joint and several liability is a combination of the two. Joint and several liability means that any defendant in a group can be liable, and any liable defendant is responsible for the entire harm. But not *every* defendant has to be liable.

When there is joint and several liability, a jury doesn't have to find that all defendants are liable (so, it's several). Any defendant can be liable – liability can exist for all defendants, or

10

some defendants, or no defendants. But if any defendant is liable, then that defendant is liable for everything (so, it's joint). A plaintiff can make any one defendant pay the full tab.

For example, imagine if a plaintiff brought a claim against Defendant A, Defendant B, and Defendant C. If there is joint liability, then there are only two potential outcomes: all defendants are liable, or no defendant is liable.

If there is several liability, then Defendant A could be liable, and/or Defendant B could be liable, and/or Defendant C could be liable (or none of the above). Each liable defendant would be responsible for his or her own share (only). They're treated separately.

If there is joint and several liability, then Defendant A could be liable, and/or Defendant B could be liable, and/or Defendant C could be liable (or none of the above). The liability of one defendant doesn't depend on the liability of another. But each liable defendant is responsible for everything.

In *In re Uranium Antitrust Litigation*, the Seventh Circuit addressed a default judgment in the context of joint and several liability. The Seventh Circuit held that the *Frow* principle applied to joint liability, but not several liability. *See In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1257–58 (7th Cir. 1980). So the *Frow* principle didn't apply to joint and several liability, either.

Again, joint liability "arises when a tortious act is committed by several persons acting in concert." *Id.* " It means that each tortfeasor is entirely responsible for the damage resulting from that concerted conduct." *Id.* Several liability, on the other hand, "arises when one defendant is found to have committed a tort without the aid of other defendants." *Id.*

11

Joint and several liability combines the two forms of liability. Liability is several because some defendants could have liability, and other defendants could have no liability. But liability is also joint because each liable defendant is responsible for all damages.

For joint and several liability, it is possible for some defendants to have liability and some defendants to have no liability. In that sense, liability is several. But any defendants who *are* liable must share liability jointly.

Not every defendant has to be on the hook when it comes to joint and several liability. But anyone who *is* on the hook is on the hook for *everything*.

The Seventh Circuit held that the *Frow* principle did not stand in the way of a default judgment when there is joint and several liability. After all, when there is joint and several liability, it is possible for one defendant to have liability and another defendant to have no liability. So there is no risk of inconsistent judgments, because the judgments don't have to be the same.

"The result in *Frow* was clearly mandated by the Court's desire to avoid logically inconsistent adjudications as to liability. However, when different results as to different parties are not logically inconsistent or contradictory, the rationale for the *Frow* rule is lacking. Such is this case involving joint and several liability." *Id.*

An early default judgment does not create a risk of inconsistency when there is joint and several liability, because the liability of each defendant can be different anyway. So, in *In re Uranium Antitrust Litigation*, a finding of liability as to nine defaulting defendants was "not inconsistent with a finding of no liability as to the other twenty, because liability [was] potentially 'several' as well as 'joint.'" *Id.*; *see also Lemache v. Tunnel Taxi Mgmt., LLC*, 354 F. Supp. 3d 149, 153 (E.D.N.Y. 2019) ("When a claim alleges joint and several liability and one

12

defendant is found liable and other defendants are not, the two judgments are not inconsistent. That is because although the theory of 'joint' liability has failed, the theory of 'several' liability permits one defendant to be liable, even when the others are not.").

In the end, the Seventh Circuit held that "*Frow* does not preclude the entry of default judgment against a group of nine defaulters prior to adjudication on the merits as to the remaining defendants, where liability is joint and several." *See In re Uranium Antitrust Litigation*, 617 F.2d at 1258.

Along the way, the Seventh Circuit confirmed that *Frow* "remains good law." *Id.* at 1257. The Seventh Circuit also pinned down when, exactly, *Frow* applies. "We view *Frow* as limited to exclusively joint liability claims or situations where there is a single res in controversy."[1] *Id.* at 1257 n.40.

---

[1] As an aside, Wright & Miller says that *Frow* applies to "joint and several liability." *See* 10A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2690 (4th ed. 2026) ("Although the rule developed in the *Frow* case applies when the claim is *joint and several*, it probably can be extended to situations in which joint liability is not at issue but several defendants have closely related defenses.") (emphasis added). But joint and several liability is different than joint liability. There is nothing inconsistent with a judgment in favor of one defendant and against another defendant when there is joint and several liability. That's the whole reason why it's called joint *and several* liability, as the Seventh Circuit explained in *In re Uranium Antitrust Litigation*. *See In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1257–58 (7th Cir. 1980); *see also Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942 (7th Cir. 2020) ("Plaintiffs have alleged joint and several liability, not merely joint liability. So an entry of default judgment against one defendant but not another is not precluded."); *Rivera v. Mattingly*, 2017 WL 7050323, at *7 (S.D.N.Y. 2017) ("[I]f the liability sought to be imposed is joint and several rather than joint, most courts have held that the rationale of *Frow* does not directly apply, since it would not be inconsistent to hold some but not all defendants liable."); *Lemache v. Tunnel Taxi Mgmt., LLC*, 354 F. Supp. 3d 149, 154 (E.D.N.Y. 2019). "[T]here is no need to apply the *Frow* rule" when "claims are several or independent in nature rather than joint." *See* 10 MOORE'S FEDERAL PRACTICE § 55.36[2] (3d ed. 2025). Maybe the authors of Wright & Miller intended to say "joint liability" instead of "joint and several liability." Or more likely, maybe the authors have a broader reading of *Frow*, concluding (as some courts do) that *Frow* applies to both joint liability *and* joint and several liability. As a second aside, Wright & Miller says that "summary judgment in favor of the answering defendants will accrue to the benefit of the defaulting defendant." *See* 10A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2690 (4th ed. 2026). That's not necessarily the case. It depends on *why* the district court entered summary judgment in favor of the answering defendants. Judge Dow illustrated the point in *Dvore v. Casmay*, 2009 WL 211856 (N.D. Ill. 2009). Judge Dow granted summary judgment in favor of the answering defendants on two claims, but entered default judgment against the employee on only one of the two claims.

The Seventh Circuit has adopted a narrower view of *Frow* than almost all other Circuits, as the Second Circuit recently pointed out. "[O]nly the Seventh and D.C. Circuits have suggested – some time ago – that the *Frow* principle should be 'limited to exclusively joint liability claims or situations where there is a single res in controversy.'" *See Moore v. Booth*, 122 F.4th 61, 68 (2d Cir. 2024) (quoting the Seventh Circuit's decision in *In re Uranium Antitrust Litigation*).

A "majority of the federal appellate courts[] have held that the *Frow* principle is not limited to cases of joint liability but more generally 'prohibits a default judgment that is inconsistent with a judgment on the merits.'" *Id.* at 68 (citation omitted). The Second Circuit recently adopted the majority view, adding to the lopsided tally. *Id.*

"As the [Second], Third, Fourth, Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits have explained, the *Frow* principle applies when the defendants are 'similarly situated' or have 'closely related defenses' even if not jointly liable." *Id.*; *see also* 10 MOORE'S FEDERAL PRACTICE § 55.36[3] (3d ed. 2025) ("Some courts have interpreted *Frow* more broadly to apply when defendants are 'similarly situated,' even if not jointly liable."); 10A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2690 (4th ed. 2026) ("Although the rule developed in the *Frow* case applies when the liability is joint and several, it probably can be extended to situations in which joint liability is not at issue but several defendants have closely related defenses.").

To sum it all up, the Seventh Circuit laid down a marker about the meaning of *Frow* several decades ago in *In re Uranium Antitrust Litigation*. But evolving case law has chipped away at its holding and eroded its foundation, leaving the Seventh Circuit standing virtually alone.

14

### III.    Applying *Frow* to Vicarious Liability

*Frow* and *In re Uranium Antitrust Litigation* provide the backdrop for the case at hand. *Frow* involved joint liability – *not* joint and several liability – based on collective action, meaning several people acting in concert. *In re Uranium Antitrust Litigation* involved joint and several liability. But the case at hand involves a different animal: vicarious liability based on a relationship between the parties.

Vicarious liability applies to principal-agent relationships, based on *respondeat superior*. *See* Richard A. Epstein, *Torts* § 9.6 (2d ed. 2026) ("The word 'vicarious' carries with it the idea that one person is held responsible for the wrongs of another solely by virtue of their relationship with that person."); Restatement (Third) of Torts: Apportionment Liability § 13 (2000) ("In a number of contexts, the responsibility of one actor is legally imputed to another, and vicarious liability is imposed. The most familiar is respondeat superior – the liability of a principal for the tortious acts of an agent and of a master for tortious acts of a servant."); Restatement (Third) of Agency § 7.03 (2006).

Agents can be directly liable for the torts they commit. But principals can be vicariously liable, too, for the same torts – even though the agent took the action, and the principal did nothing.

That's because agency law attributes the actions of the agents to their principals. Principals act through their agents, and that's true whether the agent does something good (like signing a contract) or something bad (like committing a tort). If an agent acts wrongfully, the principal acted wrongfully too.

At first blush, vicarious liability might sound like joint liability, at least in the colloquial sense. After all, vicarious liability means that one defendant (the principal) is liable because

15

another defendant (the agent) is liable. Or more specifically, the principal is liable for the misdeeds of the agent. The agent has direct liability, and the principal has derivative liability. In that sense, when vicarious liability applies, the two defendants are tethered together.

But vicarious liability is not *true* joint liability, in the strict sense of the term. *See Trico Tarek Factory v. Jetax Inc.*, 2025 WL 2625376, at *27 (E.D.N.Y. 2025) ("[T]he 'joint' and 'several' labels 'can be misleading and lack[ ] precision' when used to refer to vicarious liability doctrines like *respondeat superior*.") (quoting Restatement (Third) of Torts: Apportionment Liability § 13 (2000)).

Joint liability "requires all defendants to be liable for any one of them to be liable." *See Winwear Ltd. v. North South US Inc.*, 2022 WL 18859026, at *1 (E.D.N.Y. 2022); *see also Lemanche v. Tunnel Taxi Mgmt., LLC*, 354 F. Supp. 3d 149, 153 (E.D.N.Y. 2019) ("Where there is a claim premised on joint liability, it is impossible for one defendant to be liable unless all other defendants are also liable."); *Whelan v. Abell*, 953 F.2d 663, 674–75 (D.C. Cir. 1992) ("[I]n cases involving multiple defendants, a default order that is inconsistent with a judgment on the merits must be set aside only when liability is truly joint – that is, when the theory of recovery requires that all defendants be found liable if any one of them is liable – and when the relief sought can only be effective if judgment is granted against all.").

That's not the case when a plaintiff alleges vicarious liability. It is possible for an agent to be liable and for a principal to be not liable. For example, an employee might act outside the scope of employment. Another possibility is that the jury could find that the (alleged) agent is liable, but the (alleged) principal is not liable because there was no principal-agent relationship at all.

16

When a plaintiff alleges vicarious liability, it is possible for an agent to be liable without the principal being liable. But a principal cannot be liable based on vicarious liability unless the agent is liable.[2]

That's because the principal's liability is derivative. The liability of the principal depends on a predicate foul-up by the agent. *See Trico Tarek Factory v. Jetax Inc.*, 2025 WL 2625376, at *32 (E.D.N.Y. 2025) ("An employer does not *need* to be liable under the doctrine of *respondeat superior* in order for the alleged tortfeasor, the employee, to be liable – the tort may have been committed outside the scope of employment. Only the inverse is required; the employee does need to be liable in order for the employer to be liable.") (emphasis in original); Restatement (Third) of Agency § 7.03 (2006) ("[A] principal's vicarious liability turns on whether the agent is liable.").

Direct liability can exist without vicarious liability, but vicarious liability cannot exist without direct liability. *See Trico Tarek Factory*, 2025 WL 2625376, at *30; *J & J Sports Prods., Inc. v. Nacipucha*, 2018 WL 2709222, at *6 (E.D.N.Y. 2018); Restatement (Third) of Agency § 7.03 (2006). That is, an agent could be liable even if the principal is not liable. But the principal can't be liable (based on vicarious liability, anyway) unless the agent is liable.

In *In re Uranium Antitrust Litigation*, the Seventh Circuit suggested in *dicta* that *Frow* might govern cases with vicarious liability. When it discussed *several* liability (not joint liability), the Seventh Circuit included a cryptic reference to vicarious liability. "Several or independent liability, on the other hand, arises when one defendant is found to have committed a

---

[2] The point is not that the plaintiff has to *sue* both the principal and the agent. Strictly speaking, the agent doesn't have to be a defendant. The point is simply that the principal can't be liable based on vicarious liability unless the agent committed some misdeed. A plaintiff could sue the principal only, and seek liability based on the agent's bad act. But a plaintiff can't recover against the principal based on vicarious liability unless the agent did something wrong.

tort without the aid of other defendants. A finding of liability as to one defendant is consistent with a finding of no liability as to the others, *so long as there is no relationship between the parties requiring vicarious liability.*" *Id.* at 1257 (emphasis added); *see also Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 951 (7th Cir. 2020) ("This [case involving several liability] is also not a case of vicarious liability.").

The Seventh Circuit hasn't had many opportunities to address how, exactly, *Frow* operates in a case involving vicarious liability (if at all). But it touched on the issue at least once. *See Douglas v. Metro Rental Servs., Inc.*, 827 F.2d 252 (7th Cir. 1987). In *Douglas*, a plaintiff brought a claim under the Fair Housing Act against a rental company and its president. The company defaulted, but the president went to trial and prevailed on the merits.

The company later appeared and challenged the default judgment under *Frow*. The company argued that it couldn't have vicarious liability as the principal if the agent did nothing wrong.

The Seventh Circuit upheld the default judgment. The Seventh Circuit pointed out that, in *In re Uranium Antitrust Litigation*, it had "limited the *Frow* rule . . . to cases where all the defendants were claimed to be jointly, not severally, liable." *Id.* at 255. And the claim under the Fair Housing Act did not involve joint liability.

The Seventh Circuit acknowledged the possible tension between a judgment in favor of the agent and a (default) judgment against the principal. *Id.* (acknowledging "some logic to th[e] argument" that the company cannot "be found responsible for the discrimination if its president, Wolf, who dealt with the plaintiffs, was not personally guilty of discrimination"). But the Seventh Circuit got around the issue by brainstorming possible facts that could resolve the inconsistency. For example, maybe some *other* employee, not the president, engaged in

18

discrimination, which could give rise to vicarious liability for the employer. *Id.* ("It may be that Lester, the first Metro employee to meet plaintiffs, was the one who instigated the discrimination, or that Metro had a policy of racial discrimination set by its board of directors, or that other employees were involved. We cannot be sure, but Metro caused these problems by defaulting, and cannot now take advantage of the judgment in favor of its president.").

Judge Dow capably explored how *Frow* might apply to vicarious liability in *Dvore v. Casmay*, 2009 WL 211856 (N.D. Ill. 2009). In *Dvore*, the plaintiff brought two claims against two defendants, meaning a bank and one of its employees. The first claim was negligent misrepresentation, and the second claim was breach of fiduciary duty. *See Dvore*, 2009 WL 211856, at *1. The complaint alleged that the bank was vicariously liable for the employee's conduct. *Id.* at *4–5.

The employee didn't answer the complaint, so the court entered default under Rule 55(a) (which is different than entering a default judgment under Rule 55(b)). But the bank did defend the case. Judge Dow ultimately granted summary judgment in favor of the bank. *Id.* at *1.

After the bank prevailed, the plaintiff sought a default judgment against the employee under Rule 55(b). Judge Dow considered *Frow* and addressed whether a default judgment against the employee (as the agent) would be inconsistent with the summary judgment ruling in favor of the bank (as the principal).

Judge Dow reached a different outcome on the two claims. The difference largely turned on the basis for the summary judgment ruling. It depended on whether the ruling in favor of the bank left any room for a ruling against the employee, without creating an inconsistency.

For the negligent misrepresentation claim, Judge Dow concluded that a default judgment against the employee was not necessarily inconsistent with summary judgment in favor of the

bank. That is, it was within the realm of possibility for the employee to be liable, even if the bank was not liable. After all, the employee could have gone rogue, and made misrepresentations on his own without the blessing of the bank. *Id.* at *5 ("Plaintiff correctly has pointed out in her 'Supplemental Brief on the *Frow* Issue' that Humayun may have been running a 'freelance investment counseling service from his bank cubicle.'"). So the court entered a default judgment against the employee on the misrepresentation claim, even though the bank prevailed on that claim at summary judgment.

For the fiduciary duty claim, Judge Dow reached a different outcome, based on the rationale for the summary judgment ruling. Judge Dow ruled that the bank owed no fiduciary duty because the parties did not have a fiduciary relationship. And if the bank owed no fiduciary duty, then the employee owed no fiduciary duty, either. So, the court denied the request for a default judgment on the fiduciary duty claim.

Along the way, Judge Dow plumbed the meaning of the sentence about vicarious liability by the Seventh Circuit in *In re Uranium Antitrust Litigation*. Again, when discussing several liability, the Seventh Circuit added a disclaimer about vicarious liability: "A finding of liability as to one defendant is consistent with a finding of no liability as to the others, *so long as there is no relationship between the parties requiring vicarious liability.*" *See In re Uranium Antitrust Litigation*, 617 F.2d at 1257 (emphasis added).

Judge Dow read that sentence to mean that *Frow* might preclude the entry of a default judgment when there is vicarious liability, at least in some cases. "The logical extension of that final sentence is as follows: if there is a relationship between the parties that requires vicarious liability, then a finding of liability as to one defendant is *inconsistent* with a finding of no liability as to the others. In other words, the *In re Uranium* Court indicated, if only tacitly, that

20

the concerns animating *Frow* may be present in vicarious liability cases." *See Dvore*, 2009 WL 211856, at *3 (footnote omitted).

In the end, the key question is simply whether a default judgment against one defendant would be necessarily inconsistent with a judgment in favor of another defendant on the merits. "[W]here vicarious liability is at issue, courts should ensure that a default judgment is not logically inconsistent with a judgment in favor of another defendant." *Id.* at *4.

The answer may depend in large part on the reason why the participating defendant wins. Judge Dow in *Dvore* pointed out that defendants can have interconnected liability for different reasons. Sometimes joint liability arises because of concerted action (like in *Frow*). But sometimes two defendants have liability based on a principal-agent relationship and *respondeat superior*. Consider a few examples.

Imagine if a pack of teenagers got the bright idea to give a big push to a boulder on a mountaintop in Aspen. And imagine if that boulder enjoyed its newfound freedom, rolled downhill, picked up speed, and obliterated a Swiss chalet owned by a tech mogul. That momentarily hilarious burst of entertainment would quickly lead to joint liability. They all pushed the boulder, so they're all on the hook for the full tab.

In that situation, a judgment on the merits in favor of some teenagers would prevent a default judgment against a defaulting defendant (if they all did the same thing). For example, a jury might find that the teenagers pushed a boulder, but didn't push the boulder that smashed the chalet. If they all pushed the same boulder, and if a jury found that they didn't push the boulder that smashed the chalet, then the defaulting defendant couldn't have liability, either. They're all liable, or none of them are liable, if they all did the same thing.

21

But sometimes defendants share liability for an entirely different reason. Sometimes two defendants share liability based on the nature of their relationship. *Respondeat superior* can give rise to shared liability, too.

For example, imagine if an Amazon delivery driver drove his truck and wound his way up the mountaintop in Aspen, and encountered a boulder in the middle of the road. And then, imagine if the driver took matters into his own hands, rolled the boulder, and watched it descend down the valley before smashing into the mansion of a second tech mogul.

In that scenario, the driver could have liability. And Amazon could have liability, too, based on *respondeat superior*. Amazon as the principal would have responsibility for the torts of its agent.

Vicarious liability in that situation would depend on a few threshold questions. A plaintiff would need to prove that a principal-agent relationship existed between Amazon and the driver, and that the driver acted within the scope of employment. But if the driver was Amazon's agent, and if the driver acted within the scope of employment, then Amazon would have vicarious liability if the driver is liable.

Things get a little complicated if Amazon defends the case, and the employee does not. A jury verdict in favor of Amazon may or may not be consistent with a default judgment against the driver. It depends on the evidence.

For example, imagine if a jury concluded that the employee was off the clock when he pushed the boulder, and wasn't acting within the scope of employment at the time of the incident. In that case, a district court could enter judgment in favor of Amazon on the merits *and* enter a default judgment against the employee. That's consistent.

Alternatively, Amazon could litigate whether the driver did anything wrong, meaning whether there is any predicate liability in the first place. Imagine if the jury found in favor of the Amazon by finding that the driver pushed a different boulder – not the one that crushed the mogul's house. In that case, it is hard to see how a default judgment against the agent could be consistent with a judgment in favor of the principal. If the principal wins because the agent did nothing wrong, then it's hard to see how a default judgment against the agent could coexist with a judgment in favor of the principal.

It is hard to say in the abstract whether there will be interconnected liability in a case alleging potential vicarious liability. It is easy to see why there is joint liability when there is concerted action, such as the example with the teenagers. After all, they all participated in the same joint act. It's a little trickier to see whether there will be shared liability when there is a relationship between the defendants (such as a principal-agent relationship). It depends on the nature of the relationship, and on whether the employee went rogue.

Courts have wrestled with whether to apply *Frow* in the context of vicarious liability. *See Trico Tarek Factory*, 2025 WL 2625376, at *27–33 (summarizing the case law); *see also Lakers for Garments and Made Clothes v. Jetax Inc.*, 2025 WL 3461453, at *27–33 (E.D.N.Y. 2025). In that setting, the applicability of *Frow* might depend in part on which party defaults, meaning the principal or the agent. And it might depend on why the participating defendant prevails.

When a plaintiff sues a principal and an agent, and one of the two parties defaults, there are four potential outcomes. The principal might default, or the agent might default. That's two possibilities. Each possibility opens the door to two more possibilities.

If the *principal* defaults, then the agent might win on the merits or might lose on the merits. (That's two potential outcomes.) If the *agent* defaults, then the principal might win on the merits or might lose on the merits. (That's two more potential outcomes.)

Two of the four possibilities raise no issue, because there is no *Frow* problem if everyone loses. If the principal defaults, and the agent loses on the merits, then there is no inconsistency. Both defendants will lose, so there is no *Frow* problem.

Similarly, if the agent defaults, and the principal loses on the merits, then there is no inconsistency. Once again, if both defendants lose, *Frow* isn't an issue.

Things get more complicated if the non-defaulting party wins on the merits. The potential for an inconsistency might depend on *which* party wins. And it might depend on *why* that party wins.

If the principal defaults, and the agent wins on the merits, then there is an apparent inconsistency. A principal has vicarious liability for the misdeeds of the agent. So, if the agent wins on the merits (because there are no misdeeds), then the principal can't have liability either. After all, the liability of the principal is derivative of the liability of the agent.

That seems like a *Frow* problem – a default judgment against the principal would be inconsistent with a judgment in favor of the agent. After all, if the agent did nothing wrong, then there is nothing for the principal to be vicariously liable *for*.

On the flipside, if the agent defaults, and the principal wins on the merits, there is a *potential* problem under *Frow*. The judgments might be inconsistent with each other. Or maybe not. It depends on *why* the principal wins.

The principal might win on the merits for a reason that can coexist with a default judgment against the agent. Again, a good example is an agent who went rogue.

24

But the principal also might win on the merits for a reason that is difficult to square with liability against the agent. The principal might win based on a reason that should apply to everyone. Imagine if the principal prevails on the merits based on a finding that the agent didn't commit any misdeeds at all.[3] Or, imagine if the principal prevails based on some other problem with the plaintiff's *prima facie* case (*e.g.*, because the statute didn't apply). Or imagine if a principal wins based on an affirmative defense (say, the statute of limitations).

If the principal wins on the merits, that finding might be inconsistent with a judgment against the agent. But it depends on *why* the principal prevails. A principal might prevail on the merits for all sorts of reasons. Some of those reasons might be inconsistent with a finding of liability against the agent. And some of the reasons might allow for the possibility of a judgment against the agent (*e.g.*, if the agent acted outside scope of employment).

For that reason, some courts historically have shown more openness to flagging a *Frow* problem when the principal defaults than when the agent defaults. *See, e.g.*, *Trico Tarek Factory v. Jetax Inc.*, 2025 WL 2625376, at *32 (E.D.N.Y. 2025) ("[P]rior to [the Second Circuit's decisions in] *Henry* and *Moore*, most courts in this Circuit held that vicarious and derivative liability cases only raised the specter of inconsistent judgments when the vicariously or derivatively liable defendant defaulted and the directly liable defendant appeared.").

But recent case law within the Second Circuit (which seems to be the primary breeding ground and incubator for *Frow* issues) has recognized how *Frow* can come into play when the *agent* defaults, too. *Id.* A default judgment against the agent could "become inconsistent" with a

---

[3] A principal is free to litigate whether the agent did anything wrong, even if the agent defaults. A default judgment does not give rise to *res judicata* against the appearing parties. *See Trico Tarek Factory*, 2025 WL 2625376, at *27 (noting the "well-recognized principle . . . that default judgments have no law of the case or *res judicata* effect against the appearing parties") (citing cases).

later judgment if the principal "prevails at trial by contesting the predicate liability on its merits." *Id.*

That's why "*Frow* not only applies when the overarching theories of liability (*i.e.*, joint versus several) may give rise to inconsistencies, but when the granular factual determinations pertaining to elements of the *prima facie* claims and affirmative defenses may give rise to inconsistencies."[4]  *Id.*

Here's the punchline.  When it comes to a default judgment and vicarious liability, the answer is that "it depends."  With a theory of vicarious liability, a default judgment against one defendant might be consistent with the non-liability of another defendant, but it might not.

When it comes to vicarious liability, a one-size-fits-all approach to *Frow* might not be the best way to go.  *Frow* is well-suited to a categorical, yes-or-no approach in a joint liability case about concerted conduct.  But when vicarious liability applies, a more tailored analysis based on the granular facts might lead to a better fit.

A court might be able to enter a default judgment against one defendant – even if another defendant prevails on the merits – in a case involving vicarious liability.  Or maybe not.  The answer depends on whether it is possible for one defendant to be liable without the other defendant being liable without creating an inconsistency.  *See Trico Tarek Factory*, 2025 WL 2625376, at *27 ("Several courts held that *Frow* necessarily prohibited liability and damages determinations in *some* vicarious and derivative liability cases, on the grounds that a contrary approach would risk inconsistent judgments in certain circumstances.") (emphasis in original);

---

[4]  The Second Circuit and the Fifth Circuit apply *Frow* to affirmative defenses, too.  That is, they hold that a judgment in favor of an appearing defendant based on an affirmative defense can prevent a default judgment against a non-appearing defendant.  *See Moore v. Booth*, 122 F.4th 61, 69 (2d Cir. 2024) (applying *Frow* to a lack of exhaustion); *Brown v. City of Central*, 2024 WL 546340, at *9 (5th Cir. 2024) (applying *Frow* to the statute of limitations).

26

*Lakers for Garments and Made Clothes v. Jetax Inc.*, 2025 WL 3461453, at \*27 (E.D.N.Y. 2025).

Putting it all together, the question is whether a default judgment against one defendant would be logically inconsistent with a judgment on the merits in favor of another defendant. The timing of answering that question is important, too. *Frow* itself made that point all the way back in 1872.

In *Frow*, the Supreme Court instructed lower courts to hold off on entering a default judgment when there is joint liability. A court must allow the case on the merits against the non-defaulting defendants to run its course. That's exactly what Judge Dow did in *Dvore* – the court addressed the applicability of *Frow* after entering summary judgment in favor of the other defendants.

After entering judgment on the merits, the question is whether a default judgment against a defendant *would* be inconsistent with the judgment on the merits in favor of other defendants. But when a plaintiff moves for a default judgment early on – before claims against the other defendants have run their course – the question is different. In that situation, the question is whether a default judgment against a defendant *could* be inconsistent with a (later) judgment on the merits in favor of the other defendants. If there is a potential for inconsistency on the horizon, then a district court must hold off.

## IV.    Applying *Frow* to the Facts

With that backdrop in mind, it is finally time to turn to the motion at hand. Love wants this Court to enter a default judgment against the agent now, before resolving the claims against the principal. That request is more than a little hard to square with *Frow*.

Love alleges that the defendants have a principal-agent relationship, and that Reel Time has vicarious liability for the actions of Travelers. Reel Time is defending the case, and Travelers is not. It is possible that Reel Time will prevail on the merits. And it is possible that the reason for prevailing could preclude liability by Travelers, too (*e.g.*, imagine a ruling based on the meaning of the statute, or based on a finding that the calls never took place).

All of this is a long way of making a simple point. It is too early to enter a default judgment against Travelers, because that judgment may or may not be inconsistent with a judgment on the merits in favor of Reel Time. Time will tell.

Later, after the Court resolves the claim against Reel Time, Love could renew her request for a default judgment against Travelers. But in the meantime, this Court will sit tight. The need to avoid potentially inconsistent judgments is a "just reason for delay" in entering judgment under Rule 54(b).

## Conclusion

For the foregoing reasons, the motion for a default judgment is respectfully denied without prejudice.

Date:   July 20, 2026

Steven C. Seeger
United States District Judge

28